Erica Hashimoto from the Georgetown Law Center on behalf of Mr. Earle. With the court's permission and with Mr. Earle's consent, Olivia O'Hay, a third-year law student at the University of Georgia, will be presenting argument on behalf of Mr. Earle. And with the court's permission, Ms. O'Hay will present the argument now. Thank you very much, and Ms. O'Hay, we're very pleased to have you. All right. Is everybody able to see and hear me? The district court's grant of summary judgment should be reversed, and this court should grant a Bivens remedy for Mr. Earle's First Amendment retaliation claim. At the heart of that claim was a complete breakdown in the BOP grievance process, and it is that grievance process that safeguards all other constitutional rights and ensures that federal inmates like Mr. Earle have access to the court system. Prison officials weaponized this process against Mr. Earle when they placed him in the shoe mere days after filing a grievance. A Bivens remedy should be recognized by this court to redress that injury and ensure that federal inmates can continue to use the BOP grievance process safely and effectively. First, although this case presents a new context, there are no special factors counseling hesitation in First Amendment retaliation claims. Therefore, a Bivens remedy should be recognized by this court. Both Abbasi and Hernandez recognize that there is something unique about the federal structure and that the issues in those cases, including immigration, national security, and foreign relations policy, are uniquely federal in nature. However, Mr. Earle's claim is a garden-variety retaliation claim, the type that state and federal courts regularly hear day in and day out. It does not involve high-level government officials exercising executive authority, nor does it concern a broad policy question that will be low-level unit managers who made an intentional choice to violate BOP policy and Mr. Earle's constitutional rights. The issues in this case are simply categorically different than the recognized special factors. Moreover, Section 1983 retaliation claims against low-level state officials demonstrate that the hypothetical administrative burden on federal officials should not be considered a special factor. There are differences between state and federal prisons at a high level, particularly for officers with constitutional obligations. However, there is zero difference between what low-level state prison unit managers do and what low-level federal prison unit managers do. It's not really just a matter of comparing the different remedies available, though, to federal and state. I mean, we've been admonished by the Supreme Court to not go adding additional Bivens remedies. I mean, the court was pretty specific in the Abbasi case. The court is telling us that Bivens, excuse me, in Ziegler, is telling us that the Bivens remedy is now disfavored in terms of adding additional remedies. Why is this so unusual and never, no court has ever recognized, and certainly not the Supreme Court recognized, the Bivens remedy in the First Amendment context? Your Honor is correct. The dicta from recent cases suggests that extending Bivens may be disfavored. However, both of those cases, Hernandez and Abbasi, do still use the two-step Bivens analysis. It is still good law, and the fact that this case presents a new context that would be a modest extension of the Bivens doctrine is not enough to stop the analysis. We must consider whether there are special factors counseling hesitation, and in this instance of low-level retaliation, there are no uniquely federal special factors that would implicate separation of powers concerns. But isn't there a concern, though, with the prison ability system to run itself efficiently and to make decisions internally? And if you have federal prisoners going to court to sue every time they think they haven't been treated fairly in prison, doesn't this cause a disruption of the separation of powers and really take away from the executive the ability to place the proper parameters around the prisoner and the prisoner's activities? Your Honor, the Supreme Court has never recognized that type of administrative burden as a special factor, and in fact Carlson, which is good law, expressly rejected it, noting that federal officials and prison officials do not enjoy such independent constitutional status to insulate them from liability. Congress has created gatekeepers... Right, excuse me, I'm not suggesting that they're insulated. I'm suggesting that if, don't you have a problem, just in the real world, not talking about factors or any particular case, but don't you have a real-world problem if prisoners can go to court and sue every time they don't like how the system has treated them in terms of responding to their complaints? Doesn't that create an unworkable system, and how do we go about fashioning a rule that would cabin that so that it wouldn't get out of control? Your Honor, the rule would be unworkable only to the extent that retaliation regularly happens, which I do not think the government is willing to concede. Here, this was not a day-to-day prison administration decision, and those types of decisions would receive the benefit of qualified immunity. Only those meritorious, non-frivolous claims would make it past both qualified immunity and the PLRA gatekeeping functions to get to this court. 1983? Yes, Your Honor. You were relying on Carson, but Carson was an Eighth Amendment claim. Do you have any authority to support your First Amendment argument anywhere in the country? No, Your Honor. Federal courts in the country have not In that context, and in light of Judge Keenan's questions about the direction that the Supreme Court has been giving us on Bivens claims generally, can you talk a little bit about Bush v. Lucas, which is a First Amendment retaliation claim, and the Supreme Court fairly resoundingly rejected it, and understanding it's in a slightly different context. But help me understand, if I wanted to ignore the Supreme Court's, as you call it, dicta, I call it guidance, but I wanted to ignore that. What would I do with Bush v. Lucas? Your Honor, what makes this case distinct from Bush v. Lucas is that the plaintiffs in Bush v. Lucas had an alternative remedy available to them through the civil service remedial structure. However, Mr. Earle... Don't go in there an administrative remedy process here that he could have gone through the, I can't remember the initials, APB or something, the administrative review where he could have had his classification changed and received his job back, and those remedies were available. It seems to me quite similarly to the administrative remedies available in Bush v. Lucas. Your Honor, the BOP grievance process that you suggest Mr. Earle go through cannot provide an adequate alternative remedy for him because his complaint is that that process broke down, and that he was retaliated against for using it as he should have, and as BOP policy requests he does, to file a grievance. And so... You agree that, I mean, the court said that the alternative remedy doesn't have to be a perfect one, right? I mean, that was part of the argument in Bush v. Lucas, right? Is that the review process there was not as good as, you know, a new Bivens action would have been. Everybody sort of concedes that idea. The point is is that if you have some remedy available, as they did in Bush v. Lucas, and as Mr. Earle does here, that is, call it a special factor, call it whatever you like, that's a strong reason that counsels against expanding Bivens to totally new context where it's never been extended before. Your Honor, the BOP grievance process in this issue just simply cannot provide a remedy for Mr. Earle's allegation because his claim is that the process broke down. And so, in those very specific instances where the heart of the issue is a total breakdown in the BOP grievance process, the process itself cannot serve as an alternative remedy. And where's the Supreme Court, or any court, said that where there is a problem with the system, that that suffices to, you know, require that we make up a new cause of action under Bivens? What's the, I understand the impetus to say, oh, well, it wasn't working really well, so, you know, federal courts give me a better option. But why would I, why would I say that? What's the support for that idea? Your Honor, while the Supreme Court has specifically, an analogous breakdown could be considered in Carlson, where there was a full breakdown in the provision of medical care and the administrative decisions involved to provide that medical care, or in that instance, withhold it. And there, the Supreme Court did find a Bivens implied cause of action for that breakdown. Every case that involves a Bivens remedy acknowledges the central purpose that deterrence plays in granting that remedy. And retaliation is the exact type of behavior that should be deterred. Indeed, there is an important right at stake here. It is the principal guarantee of the Constitution. And when individual officers go rogue and violate this right, it threatens the very foundation upon which the BOP grievance process is built. There must be a way to protect this process from intentional interference. And the deterrent effect of a Bivens remedy is the key to that protection. If a federal inmate cannot trust the grievance process because they may be retaliated against for using it, they cannot vindicate any constitutional injury at the hands of a prison official. Moreover, if inmates cannot access the court system because they cannot file these grievances, then courts will have no way of knowing what type of unconstitutional conduct may be occurring in the prison system. It will frustrate the deterrent purpose of Bivens if courts have no way of accessing that information. Moreover, recognizing a Bivens remedy in this case is necessary to ensuring that Carlson does not become toothless. Permitting First Amendment retaliation frustrates. You said to ensure that Carlson does not become what? Toothless. Pardon me, Your Honor. Oh, toothless. Okay. But Carlson was extreme facts, wasn't it? Didn't somebody die from a lack of medical care? Didn't he have what? Do you have an asthma attack and didn't receive? I mean, so that's an extreme situation. And Carlson, I think the court rightly recognized. They're just some cases that are so bad that there has to be a remedy. But why is what is that? You know, uh, comparable in any way to the the, uh, grievance of Mr Earl. Two responses, Your Honor. First, you are correct. The facts alleged in Carlson did involve a death. However, that is not the threshold question. And indeed, the B. O. P. Grievance process vindicates not only the Carlson right, but all other constitutional rights. And so it is critically important, although it did not involve a death in this case. The second response is that to bring a meritorious Carlson claim. And so that will be a claim that does not present a new context and does not have any special factors. Counseling hesitation, a claim to which someone would be entitled a Bivens remedy. It is necessary to exhaust your administrative processes first, and to do that, you must be able to file a B. O. P. Grievance. However, if this court affirms the district court's granted summary judgment, it essentially sends a signal that it is okay to retaliate against inmates for using that process. How could somebody be expected to bring even a meritorious Carlson claim? If to do that, they face the potential of retaliation at the hands of prison officials. This case involving First Amendment retaliation necessary necessarily pardon implicates the important right in Carlson. Can I ask a slightly different question? If we were, um, inclined to follow your action, um, is there any reason to think that it would be limited to First Amendment retaliation as opposed to other First Amendment claims? And I'm thinking a little bit about the recent Sixth Circuit decision, um, refusing to, you know, create a Bivens remedy for First Amendment obscenity type type claims. Is there a principle that you could point us to that would suggest that your proposed Bivens remedy, uh, wouldn't extend to all First Amendment rights in in the prison context? Certainly, Your Honor. And one need look no further than Carlson for an example of that. Carlson Bivens remedies do not extend to all Eighth Amendment rights. Rather, they are cabins to the cruel and unusual punishment clause. That's an example of how you can have a narrow First Amendment retaliation Bivens remedy without implicating the other clauses of the First Amendment. What are the other Eighth Amendment? I mean, we don't tend to have excessive fines when you're in prison. I mean, what other Eighth Amendment claims would there be? I mean, you say it's cabin to the cruel and unusual provision. But what what other prison claims would arise under the Eighth Amendment? Maybe I don't have it in front of me. I'm not sure what else the Eighth Amendment would include that might come up in a prison context. Your Honor, Carlson specifically referenced excessive fines and issues involving bail. So, for example, a plaintiff would have prison context, right? Yes, Your Honor. So in this instance, a First Amendment retaliation claim would be the narrow claim that we are asking for for use of the BOP grievance process. Carlson does demonstrate that certain clauses can receive a Bivens remedy, while other clauses may not. And finally, when evaluating the special factors here, such as prison administration, it is critical in the court demands that we consider the right at issue against the proposed factor. Here, the right at issue is the right to safely use the BOP grievance process. It is indeed critically important. Not only is it a gatekeeper to the federal court system, but it is also how prison management is alerted to any potential unconstitutional behaviors. Prison management needs to know about these Moreover, the proposed special factor of administration was expressly rejected by Carlson. And so weighing these two interests against each other, it is clear that a modest and narrow extension of Bivens for First Amendment retaliation is specifically the type of deterrent remedy that Bivens was meant to provide. All right. Thank you very much. We'll hear from you later on rebuttal. Is Ms. Risenweber available? Yes. Are you able to hear and see me? Yes. Thank you. May it please the court, Erin Risenweber on behalf of the Appellees. Your Honors, the Appellees respectfully disagree that the Bivens should be extended to a prisoner's First Amendment right to be free from retaliation, as Appellant argues today. Furthermore, Appellant's heavy reliance on Carlson v. Green is certainly misplaced. 30 years have now passed since the United States Supreme Court decided Carlson. And during that time, as Judge Keenan noted, the United States Supreme Court has significantly become more cautious in any approach in expanding Bivens, as noted in their language in both Abbasi and Hernandez v. Mesa. The courts made it clear that if a statute does not clearly show Congress's intent to create a private right of action, that it certainly should not be then created by the judiciary. I wanted to note, as Judge Richardson made mention of, that this past July, the Sixth Circuit in Callahan v. Bureau of Prisons did refuse to expand Bivens to an inmate's First Amendment right. As Judge Richardson noted, that did involve a seizure of sexually explicit materials from the prisoner. But again, to date, there has been no expansion of Bivens to any First Amendment right anywhere within our court system. In the real world, Appellees submit that there are numerous special factors that counsel against extending Bivens to the remedy that Mr. Earle seeks. First of all, it is our position that anytime the judiciary is asked to expand upon Bivens remedies, you're going to involve a situation pulling in separation of left to the legislative and executive branches. And Congress sought to do that in enacting the Prisoner Litigation Reform Act. Certainly, there will be a surefire increase in prisoner litigation should the courts expand Bivens to a First Amendment right to be free from retaliation for filing grievances. I would ask your honors to, at some point, take a moment and look at Joint Appendix pages 141 and 142. For that matter, take a look at pages 106 through 146, which comprise Mr. Earle's prolific administrative remedy filing during his time in custody with the Federal Bureau of Prisons. Counsel, are you aware, did Mr. Earle file any grievance issues after the circumstances that give rise to this case? Yes, your honor. Since that time... I'm looking at at least five pages, five pages, and that's just through 2018. I don't have up through the present day in front of me. Not just the courts, but BOP counsel, as well as other government attorneys, are already handling litigation through 2255s, through 2241s, through Federal Tort Claims Act cases, and, of course, other Bivens actions from inmates. Mr. Earle is one of approximately 153,000 federal inmates, and when you add all of those up, this will certainly... any expansion of Bivens to this realm will certainly cause a burden upon many aspects of the government. I think that Judge Richardson's question about trying to limit an expansion only to this area of the First Amendment would be difficult and would set us along a slippery slope. I would see that any expansion to one area of the First Amendment, such as we're dealing with in this case, would then be used in an attempt to expand even further. Although, of course, not binding authority in this case, one district, the District of New York, in Rodriguez, that retaliation for filing grievances regarding stolen property by an inmate, the court there refused to expand Bivens to that First Amendment retaliation claim within the prison setting. Finally, in regards to the Bivens issue or the Abbasi issue, the Appelese submits that certainly there would be a chilling effect. If our corrections officers across the country are aware that they can be held liable for private damages in suits brought by inmates for this type of allegation, there certainly will be a chilling effect on those officers, which may then result in safety issues of those officers across the country. That is the Appelese position on the Abbasi portion of this case. With Your Honor's permission, I'd like to address some of the other issues within the case, although they they weren't addressed in opening argument. Are they, are they, Counselor, are they only alternative arguments? In other words, if you prevail on the Bivens claim, do any of the rest of these issues need resolution? No, Your Honor. They are only alternative arguments. In summation, in regards to the Abbasi argument, it is the Appelese position that this is not an area of the law that the United States Supreme Court, based on its recent holdings, would want Bivens expanded to. Their language has been clear in their most recent cases. No court in this country has expanded Bivens to a First Amendment claim, and the Appelese request that this court affirm the holding of the district court. Thank you. Okay, thank you very much. Ms. O'Haye, do you have any rebuttal? Yes, Your Honor's three points on rebuttal. First, the fact that Mr. Earle continued to file grievances is not dispositive for a retaliation claim. Constantine informs us that First Amendment retaliation does not depend on the actual effect of the party in question. The test is not whether it froze that person's use of the grievance process, but whether it would show a person of ordinary firmness. Surely the consequences here, being placed in segregated housing, being stripped of good time credits and a prison job, would chill a person of ordinary firmness, although it may not have for Mr. Earle. Second, Section 1983 permits First Amendment retaliation claims, and state prisons outnumber federal prisons by seven to one. Yet, there is no evidence provided that those claims have overwhelmed the court system. And Congress... Yes, Your Honor. Isn't the big difference that Congress has decided that there should be a 1983 remedy? Congress has not provided a Bivens-type remedy legislatively. And isn't that a crucial distinction? You know, as instructed by the Supreme Court, we're not supposed to be expanding in when Congress has not seen fit to do so. So really, why does it matter how many state claims... how many claims are brought under 1983? Certainly, Your Honor. We do not argue that Bivens has a remedy for every single 1983 remedy. We merely point to the fact that this type of claim against low-level officers is available to many more people in state prisons, and yet there is no evidence that the claim has overwhelmed the system. There is necessarily a smaller pool of federal inmates who would be able to bring this claim. And that's only conceding, which the government does not, that retaliation happens regularly. And so these floodgates concerns are where we can use 1983 to see that there has been no massive increase in First Amendment retaliation litigation. This court would leave incredibly vulnerable people out to dry by affirming the district court's granted summary judgment. People who are trying to use the BOP grievance process as it was meant to be used, and who were unconstitutionally retaliated against for doing so. The right at issue here, which is the right to file grievances free from retaliation, safeguards all other rights, and ensures that even meritorious and recognized Bivens claims, like Carlson claims, can see the courtroom and those can receive justice. For the foregoing reasons, this court should recognize a Bivens remedy and remand to the district court for further proceedings. Thank you. All right. Thank you, Ms. O'Haye. And the panel would like to thank both counsel for their assistance in making the hearing possible today. You know, everybody's had to go through some extra steps, and we appreciate your attention. And we've appreciated your argument as well. So thank you very much. Thank you. Thank you both.
judges: Barbara Milano Keenan, Julius N. Richardson, William B. Traxler Jr.